(42 App. Div. 490.)

PERSONS et al. v. GARDNER et al. SAME v. SAXTON et al. SAME v. HOLLISTER et al. SAME v. CLARK et al. SAME v. FORD.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

1. INSOLVENT BANKS—SUIT AGAINST STOCKHOLDERS—RECEIVERS—RETROACTIVE OPERATION OF STATUTE.

Laws 1897, c. 441, amending section 52, Laws 1892, c. 689, relating to banking corporations, and fixing liability of stockholders, providing that if such a corporation shall be dissolved, and a permanent receiver appointed, all proceedings to enforce the liability of stockholders shall be taken in the name of such receiver, unless he shall refuse to act on proper request made by a creditor, and in that event such proceeding may be taken by any creditor, is retroactive; and receivers of an insolvent bank, appointed prior to the above statute, may maintain proceedings to enforce the liability of stockholders of such corporation.

2. SAME—CHANGING REMEDY OF ENFORCING LIABILITY—CONSTITUTIONAL LAW.

Laws 1897, c. 441, amending section 52, Laws 1892, c. 689, relating to banking corporations, and fixing liability of stockholders, providing that in case any such corporation shall be dissolved, and a permanent receiver appointed, all proceedings to enforce the liability of stockholders shall be taken in the name of such receiver, unless he shall refuse to act on proper request made by a creditor, and in that event such proceeding may be taken by any creditor, is not unconstitutional, as depriving creditors of the corporation of the vested right to maintain an action to enforce the liability of stockholders created by the constitution or by former statute, since the statute only relates to the remedy of enforcing the liability.

Appeal from special term, Erie county.

Actions by Henry H. Persons and John R. Hazel, as receivers of the Bank of Commerce in Buffalo, against William H. Gardner and others; against Elijah R. Saxton, impleaded with William H. Gardner and others; against Granger A. Hollister, impleaded with William H. Gardner and others; against Charles C. Clark and Sherman S. Rogers, as executors of and trustees under the last will and testament of Christina Cameron Masten, deceased, and Joseph Griffiths Masten, impleaded with William H. Gardner and others; and against James E. Ford, executor,—respectively. From interlocutory judgments overruling demurrers to the complaint in each case (56 N. Y. Supp. 822), defendants appeal. Affirmed.

The demurrers present two principal objections to the complaint: (1) That the plaintiffs have not capacity to sue; and (2) that the complaint does not contain facts sufficient to constitute a cause of action. The amended complaint states that prior to the 3d of December, 1896, the Bank of Commerce in Buffalo was a banking corporation organized under the laws of the state of New York, with a capital stock of $200,000, divided into 2,000 shares, of the par value of $100 each share; that the stock had been fully issued and fully paid up prior to December 3, 1896; that on the 3d of December, 1896, in an action thereto-

fore brought in the supreme court, and upon the application of the attorney general, a judgment was rendered dissolving the corporation, and the judgment roll filed in Erie county, and reference is made in the complaint to that judgment for a more full statement of its particulars. It is averred that the plaintiffs were, by the decree of dissolution of the corporation, appointed receivers of all the property, things in action, and effects of the said bank, and that on the 4th of December, 1896, the plaintiffs, having given the requisite and approved bond, and fully qualified, entered upon the discharge of their duties, and that prior to the bringing of this action an order was made by the court, upon notice, "authorizing and directing these plaintiffs to begin and prosecute this action." It is alleged that, at the time of the entry of the judgment dissolving the corporation, "the contracts, debts, and engagements of said bank amounted to the sum of fourteen hundred and fifty thousand dollars ($1,450,000) and upwards; that the same were payable within two years from the time they were contracted, and no part thereof became due and payable more than two years prior to December 3, 1896; that the property and assets of said corporation. the Bank of Commerce in Buffalo, are and will be insufficient to pay the creditors thereof in full, and that, after application of all the assets, there will remain a considerable portion of said indebtedness unpaid and unsatisfied; that the stockholders of the Bank of Commerce in Buffalo are individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of said corporation, to the extent of the amount of their stock therein at par value thereof, in addition to the amount invested in such shares, in pursuance of the provisions of the statutes in such case made and provided; that these plaintiffs are by law and by the order of this court invested with the right to enforce such liability for the benefit of such creditors, and to begin and maintain this action therefor."

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Seward A. Simons and Maulsby Kimball, for appellant Reed.

Roland Crangle, for appellant Saxton.

Rogers, Locke & Milburn, for appellant Hollister.

Edward M. Mills, for appellants Clark and Rogers, as executors, and Joseph Griffiths Masten.

F. E. Ferguson, for appellant Ford.

Norris Morey, for respondents.

HARDIN, P. J. Assuming that the judgment record, to which reference is made in the complaint, fully indicates that the Bank of Commerce was organized under the laws of the state of New York, and authorized to carry on the business of banking at the time of its dissolution, a liability existed against its stockholders "for all its debts and liabilities of every kind."

Article 8, § 7, of the constitution provides, viz.:

"The stockholders of every corporation and joint-stock association for banking purposes, shall be individually responsible to the amount of their respective share or shares of stock in any such corporation or association, for all its debts and liabilities of every kind."

That section, with some difference in its language not necessary to be referred to in this case, was introduced into the constitution of 1849.

When the constitutional provision was adopted, there was no remedy given in it for the enforcement of the liability of the stockholder, and the legislature subsequently prescribed one. "The creditor was therefore necessarily left to the ordinary remedies afforded

by the courts, according to the laws and practice then existing."
Story v. Furman, 25 N. Y. 224. The legislature, in chapter 226 of
the Laws of 1849, provided for the enforcement of the liability of
stockholders of banking corporations, and in that act prescribed a
method to be pursued by the receiver for the enforcement of stock-
holders' liability. In chapter 409 of the Laws of 1882, the legisla-
ture provided for revising the statutes of the state relating to banks,
and in section 125 of that act declared the liability of stockholders.
for debts contracted by the banks mentioned, and the enforcement
thereof, as provided in that section, "and in no other manner." Sess.
Laws 1882, c. 409, § 125. In that act several provisions found in
the act of 1849 were re-enacted. See sections 138–165, inclusive.
The legislature in 1892, by chapter 689, passed an act in relation to
banking corporations, and in section 52 provided as follows:

"Except as prescribed in the stock corporation law, the stockholders of every
such corporation shall be individually responsible, equally and ratably, and not
one for another, for all contracts, debts and engagements of such corporation to
the extent of the amount of their stock therein at the par value thereof, in
addition to the amount invested in such shares."

That act repealed chapter 409 of the Laws of 1882, except sec-
tions 68, 69, 312–327, both inclusive.

By chapter 441 of the Laws of 1897, section 52 of the act of 1892
was amended so as to read as follows:

"Except as prescribed in the stock corporation law, the stockholders of every
such corporation shall be individually responsible, equally and ratably, and not
one for another, for all contracts, debts and engagements of such corporation,
to the extent of the amount of their stock therein, at the par value thereof, in
addition to the amount invested in such shares. In case any such corporation
shall have been or shall be dissolved by final order or judgment of a court
having jurisdiction, and a permanent receiver or receivers of the said corpora-
tion shall have been or shall be appointed, all actions or proceedings to en-
force the liability of stockholders under this section shall be taken and prose-
cuted only in the name and in behalf of such receiver or receivers, unless such
receiver or receivers shall refuse to take such action or proceeding upon proper
request in that behalf made by any creditor, and in that event such action or
proceeding may be taken by any creditor of the corporation. The term 'stock-
holder.' when used in this chapter, shall apply not only to such persons as
appear by the books of the corporation to be stockholders, but also to every
owner of stock, legal or equitable, although the same may be on such books in
the name of another person, but not to a person who may hold the stock as
collateral for security for the payment of a debt."

Chapter 441 became a law May 17, 1897.

It is now contended in behalf of the appellants that the amend-
ment of 1897 does not apply to and prescribe the manner and method
of the enforcement of the liability of the stockholders in the Bank
of Commerce. It must be borne in mind that chapter 441 of the
Laws of 1897 speaks from the day of its becoming a law, to wit,
May 17, 1897, and the language used relates to a class of corpora-
tions to which the Bank of Commerce belonged, and relates to the
stockholders of that kind of a corporation; and then it, in terms,
provides:

"In case any such corporation shall have been or shall be dissolved by final
order or judgment of a court having jurisdiction, and a permanent receiver or
receivers of the said corporation shall have been or shall be appointed, all

actions or proceedings to enforce the liability of stockholders under this section shall be taken and prosecuted only in the name and in behalf of such receiver or receivers, unless such receiver or receivers shall refuse to take such action or proceeding upon proper request in that behalf made by any creditor, and in that event such action or proceeding may be taken by any creditor of the corporation."

The Bank of Commerce had been dissolved by the judgment of a court having jurisdiction, and the plaintiffs had been appointed permanent receivers of that corporation; and the language, therefore, which was used in the statute, to wit, "shall have been or shall be appointed," appropriately relates to the plaintiffs, as receivers. The statute further provides that such receiver shall have the right to bring "all actions or proceedings to enforce the liability of stockholders"; and it further provides that such actions or proceedings "shall be taken and prosecuted only in the name and in behalf of such receiver or receivers, unless such receiver or receivers shall refuse to take such action or proceeding upon proper request in that behalf made by any creditor, and in that event such action or proceeding may be taken by any creditor of the corporation." After the adoption of that section, as thus amended, an action was maintainable by the receivers at their election. The legislature was careful to provide that in case the receiver or receivers refuse to take such action, with the view to the enforcement of the liability of stockholders, upon proper request made by any creditor, an action might be taken by any creditor of the corporation. The right of a creditor to proceed in an action to enforce a stockholder's liability is not taken away, except upon condition that the receivers act. If the receivers, on request, refuse to act, then it is expressly provided that an action or proceeding may be taken by any creditor of the corporation.

Considering the state of the legislation to which reference has been made, it is quite obvious that the legislature, by the act of 1897, intended to provide a method for enforcement of a stockholder's liability by receivers already appointed, or by receivers thereafter appointed in dissolution proceedings, and by way of greater precaution prescribed that, in the event a receiver should refuse to take such action upon proper request made by any creditor, any creditor of the corporation might proceed to enforce the liability of stockholders. It is to be borne in mind that it is a rule of statutory construction that a statute will be construed to be prospective, unless the intent of the legislature to give it a retroactive effect is expressed in language clear and explicit, so that no reasonable doubt exists in respect thereto. This rule has been laid down in numerous cases. In no sense does the provision destroy the rights of property or rights of action on the part of the creditors of a corporation. On the contrary, it tends to conserve their rights, by providing that actions may be brought by receivers; and, in the event the receiver does not bring the action, the legislature carefully provided the creditor should have such right. In Wood v. Oakley, 11 Paige, 400, it was said, viz.:

"It is a general rule, in the construction of statutes, that they are not to have a retroactive effect, so as to impair previously acquired rights. Courts

of justice apply new statutes only to cases which subsequently arise, unless there is something in the nature of the new provisions adopted by the legislature, or in the language of such statutes, which shows that they were intended to have a retrospective operation."

As we have already observed, the construction which is suggested does not impair the rights of creditors. They are carefully preserved by the power given to receivers to maintain actions against stockholders; and, in case the receivers refuse to act, the right of the creditor is preserved to act for himself in the enforcement of the liability of stockholders. The right of a creditor to maintain an action to enforce the liability created by constitution or by statute against a stockholder was considered by me in preparing the opinion in Pfohl v. Simpson, 50 How. Prac. 341, affirmed in 74 N. Y. 137. In that case it was maintained that an action in equity might be brought by a creditor, in his own behalf and of all others, against an insolvent corporation and its stockholders, for an accounting to ascertain the debts and assets of the corporation, and to reach the claim against the stockholders arising from their personal liability under the charter. In the course of the opinion in that case it was said:

"The constitution and the act of the legislature having declared that the liability of the stockholders should exist, and debts having been made by the corporation, 'the powers incident to the jurisdiction of the court of chancery attached themselves to the new subject;'" citing Bangs v. Duckinfield, 18 N. Y. 596; In re Canal & Walker St., 12 N. Y. 406.

It was further said in that case, viz.:

"The statute must be regarded as cumulative, when it provides the same remedy which might have been attained under the general principles of equity, asserted under the general jurisdiction of that court. In some respects the statute restricts the remedy, and in most instances it is the remedy that is affected, modified, or controlled, instead of the right to a remedy, which, as already shown, rests upon the principles of equity antedating the statutes."

But it is argued that the statute, if held to be retroactive and to apply to a case like the one in hand, is unconstitutional, and it is asserted confidently by the learned counsel for the appellants that it deprives creditors of vested rights. We think otherwise. The statute only relates to a remedy. It is competent for a legislature to give additional remedies to creditors, and to prescribe that such remedies shall be pursued, and even be exclusive, that do not impair the rights of creditors. As was suggested in Story v. Furman, supra, in the absence of statutory power the creditor was left to pursue the ordinary remedies applicable to the nature of the right to be enforced. It is said in 1 Kent, Comm. p. 470, that there is "a distinction, in the nature of things, between the obligation of a contract, and the remedy to enforce that obligation, and the latter might be modified as the wisdom of the legislature should direct." In Bronson v. Kinzie, 1 How. 315, Chief Justice Taney said, "For, undoubtedly, a state may regulate at pleasure the modes of proceeding in its courts in relation to past contracts as well as future." The doctrine of that case was referred to with approval in Story v. Furman, supra.

When the appellants became stockholders in the bank, they assented to the provisions of law which authorized the legislature to alter, amend, or modify the act under which the corporation existed. In re Oliver Lee & Co.'s Bank, 21 N. Y. 19; Plank-Road Co. v. Thatcher, 11 N. Y. 114; In re Reciprocity Bank, 22 N. Y. 9. In Crawford v. Bank, 7 How. 279, it appeared that a note had been given to the cashier of a bank, and a law was passed in Alabama "authorizing suit to be brought on such note in the name of the bank"; and it was contended that the law impaired the obligation of the contract,—especially as regards contracts made prior to the passage. In dealing with that question, the court observed: "The law is strictly remedial. It in no respect affects the obligation of the contract." In Swan v. Association, 20 App. Div. 255, 46 N. Y. Supp. 841, it appeared that the defendant was organized upon the co-operative or assessment plan in 1881; and in that year it issued a policy to the plaintiff, which contained certain agreements upon the part of the defendant, that the plaintiff sought to have enforced in the action. By chapter 400 of the Laws of 1890, the legislature provided that no order, judgment, or decree providing for an accounting, or enjoining, restraining, or interfering with the prosecution of the business of any life or casualty insurance company, shall be made or granted otherwise than upon the application of the attorney general. The complaint in that action was demurred to on the ground of its insufficiency to state facts sufficient to constitute a cause of action, and, second, on account of the want of legal capacity to sue; and when the case was in this court (20 App. Div. 260, 46 N. Y. Supp. 845) it was said, "It is the policy of the law that neither individual members nor creditors at large of a corporation shall be permitted to bring actions which shall in any material sense interfere with the system of corporate management," and that any such suit "must be instituted and conducted in the name of the people, and by the public prosecutor, the attorney general of the state." It was further said in the opinion, viz.:

"In response to the contention that the possible effect of such a construction of the statute would be to impair the obligation of a contract, and thus violate the provision of section 10 of article 1 of the constitution of the United States, it may be said that the whole scope and object of the statute is remedial only; that is, it furnishes a remedy, and prescribes a method of procedure by which that remedy may be made applicable to every person situated as the plaintiff is. This much it was certainly within the province of the legislature to do without violating any constitutional provision,"—citing Rexford v. Knight, 11 N. Y. 308; People v. Turner, 117 N. Y. 227, 22 N. E. 1022; New Orleans Waterworks Co. v. Louisiana Sugar Refining Co., 125 U. S. 18, 8 Sup. Ct. 741.

The limitation and restriction of the act of 1890 were carried into the insurance law of 1892 by section 56. The act of 1890 followed immediately upon the decision of the case of Uhlman v. Insurance Co., 109 N. Y. 421, 17 N. E. 363; and, in speaking of the act of 1890, Gray, J., in Swan v. Association, 155 N. Y. 20, 49 N. E. 261, says:

"That the act was framed to prevent such an intolerable nuisance as an insurance company would be subjected to, if one or more of its policy holders might maintain such an action, is evident."

Later on in the opinion he says:

"Nor is the act at all in violation of any constitutional right of the plaintiff, as impairing the obligation of a contract. It furnishes a remedy, as it was said in the opinion below, and prescribes a method of procedure by which that remedy may be applicable to every person situated as the plaintiff is."

The decision of the court of appeals was to the effect, viz.:

"The plaintiff has not legal capacity to maintain this action, and it must be brought, if at all, by the attorney general of the state of New York, pursuant to the requirements of chapter 690 of the Laws of 1892, which apply to this action, and prohibit the plaintiff from maintaining it."

It is not for us to determine what were the motives of the legislature, or the reasons which induced it to provide that actions against stockholders should be brought by receivers of corporations that had become insolvent. It is enough that we declare that the legislature had the power, and that the act of 1897 is constitutional and valid.

In Hirshfeld v. Fitzgerald, 157 N. Y. 166, 51 N. E. 997, it was said that section 52 of chapter 689 of the Laws of 1892 "contemplates a representative action by a creditor on behalf of himself and such other creditors as may come in and share the expense. The plaintiff, in bringing such action, does not become a trustee for the other creditors, so as to require him to carry on the litigation for their interests in opposition to his own, or after he has settled his claim." Doubtless the legislature of 1897, in the act of that year, provided for a representative action by receivers, without intending to deprive creditors of corporations of any of their just rights against stockholders thereof. In the course of the opinion delivered in the Hirshfeld Case, it was said by Haight, J.:

"It was evidently not intended by the provisions of this statute that one creditor should be preferred and paid, to the detriment of other creditors, but that the stockholders should be responsible equally and ratably for all of the debts of the corporation, to the extent of their capital stock at par value. In other words, they were to contribute equally and ratably for the payment of the whole indebtedness. The object of this statute was undoubtedly to furnish additional security to creditors, and is for the benefit of them all, and should be enforced by or on behalf of all."

The liability of the stockholders in this case, when reached, constitutes a fund to which "all the creditors are entitled to resort after the corporate property has been applied on the debts." Marshall v. Sherman, 148 N. Y. 22, 42 N. E. 422. The doctrine of that case is approved in Hirshfeld v. Fitzgerald, supra, in which latter case it was further said:

"It is true that the capital stock of a corporation is a trust fund for the security of the creditors, and the amount recoverable from the stockholders under the statute in addition to the capital stock may be treated as a like security; but, as we have shown, the creditor is not permitted to bring an action in his own behalf alone for a contribution by the stockholders, for in that way he would obtain a preference for himself. He must bring an action for himself, and on behalf, not of all the creditors, but on behalf of those who choose to come in and share the benefits and expenses of the litigation. His relation with the other creditors is one that the law creates. He assumes to prosecute on their behalf only in so far as his personal interests require."

It may be supposed that the act of 1897 obviates some uncertainties and mischiefs which arose in the case of Hirshfeld v. Fitzgerald,

supra. Certain limitations and restrictions are declared in section 55 of the stock corporations law (Laws 1892, c. 688); and in Hirshfeld v. Fitzgerald, supra, it was said that the bringing of an action by the attorney general to dissolve the association, and the procuring of an injunction restraining creditors from bringing actions, rendered compliance with this part of the statute impossible, and therefore excusable.

The presence of the receivers as plaintiffs in this case will enable the court to ascertain and determine how much is required from the stockholders after the application of the assets of the corporation, and how much each creditor is entitled to receive in liquidation of his indebtedness for which the stockholders are declared liable.

Some minor questions have been presented by the several demurrers in this case, which are so satisfactorily considered in the valuable opinion of LAUGHLIN, J., delivered at special term, that we forbear further comment in respect to them.

The foregoing views lead to the conclusion that the demurrers were properly overruled. See Mahoney v. Bernhardt, 27 Misc. Rep. 339, 58 N. Y. Supp. 748.

Interlocutory judgments affirmed, with costs, with leave to the demurrants, severally, to withdraw their demurrers and answer upon payment of the costs of each demurrer, and the costs of this appeal to the respondents against each appellant who appeared in the argument. All concur.